PEOPLE v CROCKRAN

Docket No. 294831. Submitted March 8, 2011, at Detroit. Decided April 5, 2011, at 9:20 a.m.

Dewayne E. Crockran was charged in the Genesee Circuit Court with first-degree premeditated murder, carrying a concealed weapon, possession of a firearm by a felon, and possession of a firearm during the commission of a felony. The court, Judith A. Fullerton, J., granted defendant's motions to suppress the custodial statement he made to the police without the assistance of counsel and to dismiss the information. The prosecution appealed.

The Court of Appeals *held*:

1. The determination whether an attorney-client relationship exists focuses on a client's subjective belief that he or she is consulting the attorney in his or her professional capacity and the client's intent to seek the attorney's professional legal advice. The record in this case contains a plethora of evidence that demonstrates that there was an attorney-client relationship between defendant and attorney Frederick Blanchard before defendant made his custodial statement to the police. Defendant demonstrated a subjective intent to consult Blanchard in his professional capacity and seek legal advice about his alleged involvement in the crimes before he was arrested, at the time of his arrest, and following his arrest. Under the facts presented, an attorney-client relationship existed between defendant and Blanchard. The trial court erred by holding that, because Blanchard was not paid for his services before defendant was arrested, Blanchard was not defendant's lawyer.

2. There is no doubt that defendant knew that he had a lawyer at the time of his arrest and knew that his lawyer wanted to talk to the police. Under the circumstances, it cannot be shown that the police concealed the fact that defendant had counsel available to him and that counsel was at his disposal. Suppression of the statement was not warranted on this basis.

3. The right to counsel may be validly waived in custodial interrogation after the Sixth Amendment right to counsel has attached, even if the interrogation was initiated by the police. No error occurred in the police-initiated interrogation of defendant

wherein defendant did not say that he wanted his attorney present and said that he would talk without his attorney present. The order suppressing defendant's statement is reversed, the order dismissing the information is vacated, and the case is remanded to the trial court.

Reversed, vacated, and remanded.

1. CONSTITUTIONAL LAW — RIGHT TO COUNSEL — CUSTODIAL INTERROGATIONS.

Law enforcement investigators may not, as part of a custodial interrogation, conceal from a suspect that counsel has been made available to and is at the disposal of the suspect.

2. ATTORNEY AND CLIENT — EXISTENCE OF ATTORNEY-CLIENT RELATIONSHIP.

The determination whether an attorney-client relationship exists focuses on the client's subjective belief that the client is consulting the attorney in his or her professional capacity and the client's intent to seek the attorney's professional legal advice.

3. CONSTITUTIONAL LAW — RIGHT TO COUNSEL — WAIVER OF RIGHT TO COUNSEL — CUSTODIAL INTERROGATIONS.

The Sixth Amendment right to counsel may be validly waived in custodial interrogation after the right to counsel has attached even if the interrogation was initiated by the police.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *David S. Leyton*, Prosecuting Attorney, *Donald A. Kuebler*, Chief of Appeals, Training, and Research, and *Vikki Bayeh Haley*, Assistant Prosecuting Attorney, for the people.

Before: WILDER, P.J., and SAAD and DONOFRIO, JJ.

PER CURIAM. Defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a), carrying a concealed weapon, MCL 750.227, possession of a firearm by a felon, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. Relying on *People v Bender*, 452 Mich 594; 551 NW2d 71 (1996), the trial court suppressed defendant's custodial statement and thereafter granted de-

fendant's motion to dismiss the information. The prosecution appeals as of right. We reverse the order suppressing defendant's statement, vacate the dismissal of the information, and remand. This opinion shall have immediate effect pursuant to MCR 7.215(F)(2).

## I. FACTS AND PROCEEDINGS

Defendant was charged with first-degree murder and the weapons offenses in connection with the February 6, 2009, shooting death of Nate Henson outside the front door of Club Xclusive in Flint. Defendant was arrested at approximately 10:30 a.m. on February 26, 2009. Between the date of the charged offense and defendant's arrest, defendant had over 20 contacts with an attorney, Frederick Blanchard, to discuss the matter. Shortly after defendant was arrested, defendant's family members made a payment to Blanchard between 11:00 a.m. and noon on February 26, to secure his services as counsel for defendant. Blanchard then contacted the police station several times to advise the police that he was defendant's attorney and wanted to speak to defendant. No one advised defendant that Blanchard had attempted to contact him. Defendant submitted to a police interview at approximately 10:00 or 11:00 p.m. that night. Defendant gave a statement to Sergeant Mike Angus in which he admitted shooting the victim, but claimed that he had acted in self-defense. Angus testified that he was not aware of Blanchard's attempt to reach his client. Angus received the message the following day.

Defendant moved to suppress his statement on the basis of *Bender*, 452 Mich 594, because the police failed to inform him that his "retained counsel had been attempting to contact him." The trial court found that,

despite all the contacts between defendant and Blanchard, "the record is clear that [Blanchard] was not retained until around noon that day." The trial court also found that the record supported Blanchard's assertions that he had repeatedly attempted to contact defendant or reach Angus before defendant made his statement to Angus. The trial court agreed that *Bender* controlled and specifically cited Justice CAVANAGH's opinion at 452 Mich 614. The trial court determined that the instant case was indistinguishable from *Bender*, and that Justice CAVANAGH's opinion controlled, stating:

> [T]he Court [in *Bender*] affirmed the trial court's suppression of the Defendant's [sic] statement after the police failed to inform [the defendants] that counsel had been retained for them and of counsel's attempt to contact them. It seems to me that fits exactly in that situation, of this box, the *Bender* box, if you want to call it that.

The trial court thereafter granted defendant's motion to quash because, without the statement, the evidence was insufficient to bind defendant over for trial. This appeal followed.

II. ANALYSIS

This Court reviews a trial court's findings of fact at a suppression hearing for clear error and reviews de novo questions of law and the trial court's ultimate decision whether to suppress the evidence. *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001).

The prosecution initially argues that *Bender* was incorrectly decided and should be overruled. However, only the Supreme Court has the authority to overrule its own decisions. *Paige v Sterling Hts*, 476 Mich 495, 524; 720 NW2d 219 (2006). Until it does so, "all lower courts and tribunals are bound by that prior decision

and must follow it even if they believe that it was wrongly decided . . . ." *Id.* Therefore, this Court is bound to follow *Bender*, as was the trial court. But, importantly, the lead opinion in *Bender* cited by the trial court that was authored by Justice CAVANAGH and joined by Justices LEVIN and MALLETT was not the majority opinion in *Bender*. Rather, as our Supreme Court stated in *People v Sexton*, 458 Mich 43, 53; 580 NW2d 404 (1998), the "ultimate holding" of the *Bender* Court was stated in the opinion by Chief Justice BRICK-LEY, joined by Justices LEVIN, CAVANAGH, and MALLETT. *Id.* at 53-54, citing *Bender*, 452 Mich at 620-621 (opinion by BRICKLEY, C.J.). The trial court, therefore, improperly relied on Justice CAVANAGH's opinion in *Bender*, because it was not the majority opinion. *Sexton*, 458 Mich at 53.

The trial court also relied on this Court's opinion in *People v Leversee*, 243 Mich App 337, 346-347; 622 NW2d 325 (2000), that also incorrectly referred to Justice CAVANAGH's lead opinion as the majority opinion. In *Leversee*, this Court explained that it is not necessary that an attorney or family member speak directly to the interrogating officer. Rather, it is sufficient if an attorney contacts a "police" station to communicate the attorney's desire to speak to a client because " 'the police, as an entity, have the fundamental responsibility to establish and maintain adequate procedures that will allow an attorney to communicate with a suspect and the interrogating officers without unreasonable delay.' " *Id.*, quoting *Bender*, 452 Mich at 617-618 n 24 (CAVANAGH, J.). This discussion is merely dicta because it does not go to the holding of the case where the panel found that although the admission of the defendant's statement to the police was error, the error was harmless because of the overwhelming evidence of the defendant's guilt. *Leversee*, 243 Mich App

at 347. Statements and comments in an opinion concerning a rule of law or debated legal proposition that are not essential to the disposition of the case constitute obiter dicta and lack the force of a binding adjudication. *McNally v Wayne Co Bd of Canvassers*, 316 Mich 551, 558; 25 NW2d 613 (1947). Accordingly, we conclude that the language relied on by defendant creating a "police entity" is not binding and has no precedential value. *People v Borchard-Ruhland*, 460 Mich 278, 286 n 4; 597 NW2d 1 (1999). Moreover, we question the wisdom of treating a police or sheriff's department as a monolithic entity to the extent that an inquiry to "one person" will be treated as notice to all.

The rule applicable to this case is the prophylactic rule outlined by Chief Justice BRICKLEY in *Bender* in his majority opinion:

> The right to counsel and the right to be free of compulsory self-incrimination are part of the bedrock of constitutional civil liberties that have been zealously protected and in some cases expanded over the years. Given the focus and protection that these particular constitutional provisions have received, it is difficult to accept and constitutionally justify a rule of law that accepts that *law enforcement investigators, as part of a custodial interrogation, can conceal from suspects that counsel has been made available to them and is at their disposal.* If it is deemed to be important that the accused be informed that he is entitled to counsel, it is certainly important that he be informed that he has counsel. [*Bender,* 452 Mich at 621 (emphasis added).]

Thus, the crux of the question presented here is whether, under the facts presented, it can be shown that the police actually concealed the fact that defendant had counsel available to him and that counsel was at his disposal. *Id.* To answer this question, we must first scrutinize the relationship between defendant and

Blanchard. In *Grace v Center for Auto Safety*, 72 F3d 1236, 1242 (CA 6, 1996), the United States Court of Appeals for the Sixth Circuit stated that whether an attorney-client relationship exists focuses on a client's subjective belief that he or she is consulting the attorney in his or her professional capacity and the client's intent to seek the attorney's professional legal advice. Here, contrary to the trial court's determination, the record contains a plethora of evidence that demonstrates that an attorney-client relationship between defendant and Blanchard existed before defendant's statements to Angus.

Blanchard testified that in the early part of February, he and defendant "had discussed him retaining me but it hadn't been finalized" because Blanchard had not been paid. They had many conversations. Blanchard's cell phone records showed over 20 phone calls between defendant and him from February 21 to February 26, 2009. When Blanchard became aware of information about Crime Stoppers, he and defendant "had a conversation and I told him that he should turn himself in and subsequent to that he said okay, see what they, you know, want to do and so I called the local Crime Stoppers number."

Blanchard called the local Crime Stoppers phone number on February 20, at 4:48 p.m. The call went to Officer Jermaine Reese's voice mailbox. Blanchard left a message that he was an attorney and Reese should contact him about "my bringing Mr. Crockran." Blanchard agreed that the message stated, "I was Mr. Crockran's attorney. I requested a call back so that I could arrange for his surrender." Reese testified that he received a voicemail message on the Crime Stoppers phone line from Blanchard stating that he believed that defendant had been on

Crime Stoppers, that Angus was in charge of the case, and requesting a return phone call.

On February 26, 2009, at 10:34 a.m., defendant called Blanchard and said that the police were downstairs at defendant's house. Blanchard advised defendant to go downstairs, peacefully turn himself in, hand the cell phone to the police officer, and say that Blanchard wanted to speak with him. Before Blanchard could speak to the police, the phone went dead. The call lasted approximately two minutes. Blanchard called one of defendant's family members and reported that defendant had been arrested and "that the terms of the agreement need to be finalized." A family member "made the arrangements" and Blanchard received the initial funds in Flint between 11:00 a.m. and noon. When Blanchard was asked when he was "retained on this matter," he responded, "Well, the terms were discussed sometime the 22nd/23rd of February. When did I actually receive money? It was . . . between eleven and twelve on the 26th of February."

Without a doubt, defendant demonstrated a subjective intent to consult Blanchard in his professional capacity and seek legal advice about his alleged involvement in this matter before his arrest. The record shows that defendant and Blanchard had more than 20 contacts in less than one week immediately preceding his arrest. The record is plain that Blanchard advised defendant with regard to the Crime Stoppers issue and even called the Crime Stoppers' phone number indicating that he was in a position to bring defendant in to the police to surrender and face the charges.

Further, the record is plain that defendant demonstrated a subjective intent to consult Blanchard in his professional capacity and seek legal advice about his alleged involvement in this matter both at the exact

time of his arrest and following his arrest. Defendant testified that when he became aware of the fact that the police were present and wanted to take him into custody on February 26, 2009, he called Blanchard. Blanchard told defendant that he wanted to speak with the police. According to defendant, he had a phone in his hand while he was going down the stairs to tell the police that Blanchard wanted to speak with them, but when he got to the end of the stairs, the arresting officer threw defendant on the floor, grabbed the phone, and hung it up. Defendant's testimony indicates that he repeatedly referred to "my" lawyer when he spoke to the police.

> *Q.* Did you mention to the police officers the reason you had the phone in your hand?
>
> *A.* Yes, I did. I told 'em my lawyer was on the phone.
>
> *Q.* And that was before you were taken into custody?
>
> *A.* Yes, sir.

Defendant further testified that after the police placed him in the back of a vehicle, he asked an officer standing nearby if he could call his attorney. The officer told defendant to wait until Angus came out of the house. Defendant stated that when Angus came outside, defendant asked him if he could call his lawyer, but Angus did not respond. They went across the street to buy gas. Defendant "asked him again can I see my— can I talk to my lawyer?"

Under the facts presented at the evidentiary hearing by both defendant and Blanchard, we conclude that an attorney-client relationship existed pursuant to the test set out in *Grace*, 72 F3d at 1242. The trial court clearly erred when it found that Blanchard was not defendant's lawyer because he had not been paid and used this faulty analysis in its determination about the existence

of an attorney-client relationship between defendant and Blanchard. While payment for services is important to the determination whether an attorney had been retained, it is but one consideration in whether an attorney-client relationship existed. And here, where voluminous evidence shows an attorney-client relationship, it overwhelms the fact that defendant had not paid Blanchard for his services before his arrest.

Because the facts indicate that defendant and Blachard had an established attorney-client relationship as shown by their conduct during the week leading up to defendant's arrest as well as at the time of his arrest, there is no doubt that defendant was aware that he had counsel immediately following his arrest during transport and in the hours following his arrest at the police station. Again, defendant was actually speaking to his counsel at the time the police took him into custody. At that time his counsel explicitly told defendant that he wanted to speak with the police. Defendant even relayed that message to the arresting officer. However, during the arrest the phone went dead and the arresting officer did not speak to defendant's counsel. Defendant certainly knew that his counsel wanted to talk to the police and knew that that did not happen. Under these circumstances we cannot see how it could be shown that the police concealed the fact that defendant had counsel available to him and that counsel was at his disposal. *Bender*, 452 Mich at 621 (opinion by BRICKLEY, J.). Defendant was clearly aware that he had counsel and that his counsel wanted to speak to the police. That Blanchard repeatedly called the police station after defendant's arrest but never reached defendant or Angus is of no consequence to our determination because defendant already knew that he had counsel and that his counsel was available to him. *Id.* In fact,

defendant testified that later in the day at the police station Angus came to his holding cell just before the interview. Angus asked defendant to come with him, and defendant "asked him where we going? And he said we come to talk to you." According to defendant, defendant asked him again if he could have his lawyer, stating, "I need my lawyer." Defendant testified that Angus did not respond and took him to the interview room next door. This is further evidence that defendant was aware that counsel was available to him and that counsel was at his disposal. *Id.* Under these facts, we conclude that there has been no violation of *Bender* and suppression was not warranted.

While not explicitly raised, under these circumstances, we are compelled to point out that once the Sixth Amendment right to counsel has attached a defendant may still validly waive that right to counsel even if the interrogation was initiated by the police. *Montejo v Louisiana*, 556 US 778; 129 S Ct 2079; 173 L Ed 2d 955 (2009). *Montejo* reflects a recent change in the law. Previously, in *Michigan v Jackson*, 475 US 625; 106 S Ct 1404; 89 L Ed 2d 631 (1986), overruled by *Montejo*, 556 US at 797, the United States Supreme Court held that once the Sixth Amendment right to counsel attached, a defendant could not validly waive that right to counsel in custodial interrogation initiated by the police. *Jackson*, 475 US at 636. The holding in *Jackson* was expressly overruled in *Montejo*. *Montejo*, 556 US at 797. The United States Supreme Court held that the right to counsel may be validly waived in custodial interrogation after the Sixth Amendment right to counsel has attached, even if the interrogation was initiated by the police. *Id.* at 794-796.

Defendant admitted that he received his *Miranda*[1] rights and understood them before the interrogation. According to defendant, during the interview, he asked Angus if he knew Blanchard and if defendant needed him. Defendant testified that Angus told him that if he "lawyered up," it would be "a problem." Defendant also testified that he told Angus that at the time of his arrest, he was on the phone with Blanchard. Defendant agreed that he was willing to talk to Angus and tell him his side of what happened. Defendant asked Angus if he needed a lawyer, but never said he wanted to stop talking to Angus and wanted an attorney. Angus video-taped the entire two-hour conversation. Angus testified that defendant did not say that he wanted an attorney present and said that he would talk without an attorney present. After reviewing the record, we see no error with this police-initiated interrogation. *Montejo*, 556 US at 794-796.

Reversed, vacated, and remanded. This opinion shall have immediate effect pursuant to MCR 7.215(F)(2). We do not retain jurisdiction.

WILDER, P.J., and SAAD and DONOFRIO, JJ., concurred.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).