# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

KENNETH CARL GRONDIN III,

        Defendant-Appellee.

UNPUBLISHED
March 24, 2015

No. 311295
Lapeer Circuit Court
LC No. 12-010954-FC

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

PER CURIAM.

The prosecutor appeals the trial court's order granting defendant's motion to suppress statements made during a police interview. The trial court determined that suppression was required under *People v Bender*, 452 Mich 594, 597; 551 NW2d 71 (1996), overruled by *People v Tanner*, 496 Mich 199; 853 NW2d 653 (2014), because the police failed to notify defendant that an attorney had been retained and was attempting to contact him before defendant waived his *Miranda*[1] rights and submitted to the police interview. This Court originally denied the prosecutor's application for leave to appeal.[2] The prosecutor filed an application for leave to appeal with our Supreme Court, which held the application in abeyance pending a decision in *Tanner*. After the Supreme Court decided *Tanner*, in which it overruled *Bender*, it remanded this case to this Court for consideration as on leave granted. *People v Grondin III*, 497 Mich 867; 853 NW2d 372 (2014). We reverse and remand for further proceedings.

Defendant was charged with open murder, MCL 750.316, in connection with the death of his girlfriend. After the victim's body was discovered at a relative's house, the police arrived at defendant's home, where he lived with his mother, to question him about the victim's death. Officers arrived at the home between 5:00 and 5:30 a.m. and then brought him to a police post for an interview. Defendant was advised of his *Miranda* rights and agreed to give a statement, but made no inculpatory statements during this interview. He also consented to provide a buccal

---

[1] *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] *People v Kenneth Carl Grondin III*, unpublished order of the Court of Appeals, entered October 25, 2012 (Docket No. 311295).

swab and hair samples. After the interview, the police returned with defendant to his home where he and his mother consented to a search of the home. During the search, defendant's mother spoke on the telephone with a family attorney, whom defendant's grandfather had retained to represent defendant. Conflicting testimony was presented regarding whether defendant's mother was allowed to talk to defendant about the attorney's availability and desire to speak to defendant. The family attorney testified that he spoke to the officer who was at the house and informed the officer that he wanted to speak with defendant, but the officer would not allow defendant to speak on the phone. Other detectives arrived at the home to take defendant for an enhanced interview. Over the next several hours, the family attorney attempted to contact the detectives to prevent any questioning, but his calls were disconnected or sent to voicemail. The attorney also attempted to contact and visit the police stations where defendant was believed to have been taken, but the attorney was given conflicting information regarding the interview location. Despite the numerous calls to detectives and trips to police posts, the attorney was unable to reach defendant before he submitted to an interview later that afternoon. During the second interview, defendant initially denied any involvement with his girlfriend's death, but ultimately gave incriminating statements that led to charges against him. Relying on *Bender*, the trial court determined that the failure of the police to notify defendant of the attorney's availability and attempts to contact defendant required suppression of his statements at the second interview.

The prosecutor argues that the trial court's decision must be reversed in light of our Supreme Court's recent decision in *Tanner*, in which it overruled its decision in *Bender*. We agree. Questions of law pertaining to a motion to suppress are reviewed de novo. *People v Keller*, 479 Mich 467, 473; 739 NW2d 505 (2007). Constitutional claims also present questions of law that are reviewed de novo. *Id*. at 473-474. The trial court's factual findings when ruling on a motion to suppress are reviewed for clear error. *People v Elliott*, 494 Mich 292, 300; 833 NW2d 284 (2013). The trial court's role in determining factual issues and issues of credibility must be respected. *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004). However, the trial court's application of the law is not entitled to the same deference as factual findings. *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005). Accordingly, the court's ultimate ruling on a motion to suppress is reviewed de novo. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).

The United States Constitution, US Const, Am V, and the Michigan Constitution, Const 1963, art 1, § 17, both prohibit compelled self-incrimination. *Elliott*, 494 Mich at 301 n 4. The prosecutor may not use a defendant's exculpatory or inculpatory statements arising from a custodial interrogation unless it demonstrates the application of procedural safeguards to protect the privilege against self-incrimination. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. The defendant may waive his rights if the waiver is made voluntarily, knowingly, and intelligently. *Id*.

In *Moran v Burbine*, 475 US 412; 106 S Ct 1135; 89 L Ed 2d 410 (1986), the United States Supreme Court held that the failure of police to inform a suspect of an attorney's efforts to reach that suspect does not invalidate the suspect's waiver of *Miranda* rights. The Court explained:

Events occurring outside the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right. Under the analysis of the Court of Appeals, the same defendant, armed with the same information and confronted with precisely the same police conduct, would have knowingly waived his *Miranda* rights had a lawyer not telephoned the police station to inquire about his status. Nothing in any of our waiver decisions or in our understanding of the essential components of a valid waiver requires so incongruous a result. No doubt the additional information would have been useful to respondent; perhaps even it might have affected his decision to confess. But we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights. Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law. . . .

Nor do we believe that the level of the police's culpability in failing to inform respondent of the telephone call has any bearing on the validity of the waivers. . . . But whether intentional or inadvertent, the state of mind of the police is irrelevant to the question of the intelligence and voluntariness of respondent's election to abandon his rights. Although highly inappropriate, even deliberate deception of an attorney could not possibly affect a suspect's decision to waive his *Miranda* rights unless he were at least aware of the incident. . . . Nor was the failure to inform respondent of the telephone call the kind of "[trickery]" that can vitiate the validity of a waiver. . . . Granting that the "deliberate or reckless" withholding of information is objectionable as a matter of ethics, such conduct is only relevant to the constitutional validity of a waiver if it deprives a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them. Because respondent's voluntary decision to speak was made with full awareness and comprehension of all the information *Miranda* requires the police to convey, the waivers were valid. [*Id*. at 422-424 (citations omitted).]

Despite its holding, the Supreme Court stated that state courts were free to adopt different standards for the conduct of its employees and officials as a matter of state law. *Id*. at 427-428.

In *Bender*, 452 Mich at 607, 612, our Supreme Court accepted the *Moran* Court's invitation to adopt different requirements and held that, "in Michigan, more is required before the trial court may find a knowing and intelligent waiver." The Court stated:

We hold that Const 1963, art 1, § 17 requires the police to inform the suspect that a retained attorney is immediately available to consult with him, and

failure to so inform him before he confesses per se precludes a knowing and intelligent waiver of his rights to remain silent and to counsel.[3] [452 Mich at 597.]

In *Tanner*, 496 Mich at 203, our Supreme Court rejected the contention that Michigan's constitutional provision against self-incrimination affords greater protection than the United States Constitution and overruled its decision in *Bender*. The Court explained:

> Our independent examination of Article 1, § 17, supports *Moran*'s conclusion that "full comprehension of [the *Miranda* rights] are sufficient to dispel whatever coercion is inherent in the interrogation process," *Moran*, 464 [sic] US at 427, because the warnings provide a suspect with the necessary information both to apprehend these rights and to make an intelligent and knowing waiver of the rights if he chooses. The waiver of rights cannot logically be affected by events that are unknown and unperceived, such as the fact that an attorney is somewhere present to offer assistance. As explained by one scholar:
>
> "If there is any police misconduct, the suspect is unaware of such events because it is directed toward the attorney. Facts and events unknown to the suspect cannot have a coercive effect on the suspect. Therefore, the attorney's efforts and/or presence is irrelevant to the suspect's ability to make a voluntary, knowing, and intelligent waiver of his *Miranda* rights. Moreover, as the suspect is still read his *Miranda rights*, such events do not operate to deprive the suspect of the knowledge of his rights.
>
> To argue or conclude that a defendant, who by the good fortune of a family member hiring an attorney, must be told of the attorney's attempts to make contact in order to make a knowing and intelligent waiver of *Miranda* rights is illogical and nonsensical. In fact, for the majority's reasoning to make sense, the majority would have to conclude that persons who are capable of retaining an attorney, or have family or friends who are capable of hiring a retained attorney, are not capable of making a knowing and intelligent waiver of *Miranda* rights even when the attorney is not present. As is evident by the admissibility of a suspect's *Miranda* waiver in the ordinary custodial interrogation situation, the majority would not so conclude. [Carroll, *A Look at People v Bender: What Happens when the Michigan Supreme Court Oversteps Its Power to Achieve a*

---

[3] In *Bender*, the lead opinion, signed by three justices, concluded that the result was required by the right against self-incrimination in the Michigan Constitution, Const 1963, art 1, § 17. *Bender*, 452 Mich at 597. Justice BRICKLEY agreed with the requirement that the police must inform suspects that counsel has been retained for them, *id*. at 622-623, and recognized that both the right against self-incrimination and the right to counsel, Const 1963, art 1, §§ 17 and 20, respectively, are implicated, *id*. at 620, but preferred to announce a prophylactic rule, *id*. at 621. Consequently, "practically speaking," Justice BRICKLEY's opinion, although labeled a concurrence, constitutes the majority opinion. *Tanner*, 496 Mich at 215 n 8; see also *People v Crockran*, 292 Mich App 253, 256-257; 808 NW2d 499 (2011).

*Results-Oriented Decision*, 74 U Det Mercy L Rev 211, 236-237 (1997) (citations omitted).]"

> We therefore agree with *Moran* that an outside and unperceived development, such as an attorney's presence and initiation of contact with police, "can have no bearing on [a suspect's] capacity to comprehend and knowingly relinquish a constitutional right." *Moran*, 475 US at 422. Instead, as noted by the United States Supreme Court in *Colorado v Spring*, 479 US 564, 577; 107 S Ct 851; 93 L Ed 2d 954 (1987), "the additional information could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature." It might not be in a suspect's best interest to make a statement, but this Court need not concern itself with the wisdom of a suspect's confession. To the contrary, voluntary but "foolish" confessions should be welcomed, as a suspect's perhaps unwise but purely voluntary urge to tell the truth is vital in assisting the fact-finder in ultimately ascertaining the truth of what occurred. [*Tanner*, 496 Mich at 247-248 (footnotes omitted).]

Accordingly, the Court overruled its decision in *Bender* and held that "the failure of police to inform a suspect of an attorney's efforts to contact him does not invalidate an otherwise 'voluntary, knowing, and intelligent' *Miranda* waiver." *Id*. at 249.

Because the trial court determined that suppression of defendant's written and oral statements was required solely on the basis of *Bender*, which has since been overruled, we reverse the trial court's order suppressing defendant's statements.[4] Although *Tanner* requires reversal of the trial court's suppression order, it does not resolve the admissibility of defendant's statements. As indicated, the Supreme Court in *Tanner* held that "the failure of police to inform a suspect of an attorney's efforts to contact him does not invalidate *an otherwise 'voluntary, knowing, and intelligent' Miranda waiver*." *Tanner*, 496 Mich at 249 (emphasis added). Thus, it must be determined whether defendant's *Miranda* waiver was "otherwise voluntary, knowing, and intelligent. In *Tanner*, 496 Mich at 209, the Supreme Court looked to the two-part test established in *Moran*, 475 US at 421:

> First, the relinquishment of the right must have been "voluntary," in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

---

[4] Given our decision, it is unnecessary to address the prosecutor's arguments that the trial court erred in determining that *Bender* was applicable, or that defendant was not subjected to a custodial interrogation.

The analysis must be bifurcated to inquire whether the waiver was voluntary, and whether the waiver was knowing and intelligent. *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005).

We note that although the trial court relied on *Bender* to hold that defendant's statements were not *voluntary*, the Supreme Court in *Bender* did not hold that the failure to inform the defendants of their attorneys' attempts to contact them affected the *voluntariness* of their statements. Rather, the failure to impart this information affected only whether the waiver of their rights to remain silent and to counsel were knowingly and intelligently made. *Bender*, 452 Mich at 605, 614. Indeed, the Court in *Bender* agreed that because there was no evidence of police coercion, "neither defendant's statement was involuntary, and thus need not be suppressed for that reason." *Id.* at 604.

In *Tanner*, 496 Mich at 247, our Supreme Court explained that *Miranda* warnings "provide a suspect with the necessary information both to apprehend these rights and to make an intelligent and knowing waiver of the rights if he chooses." The record discloses that defendant was advised of his *Miranda* rights before the police interview, and that he signed a written certification acknowledging that he could have an attorney at any time, that he could use the phone free of charge to call an attorney, that an attorney would be provided if he could not afford one, that he could stop the interview at any time, and that the interrogating officer could be called upon to testify regarding the interview. Defendant did not challenge this evidence in the trial court. Moreover, the trial court found that the police "conscientiously adhered to the verbal formula of the *Miranda* decision" in advising defendant of his rights, and defendant does not challenge that finding on appeal. Apart from the attorney contact issue, the trial court never identified any basis for finding that defendant's *Miranda* waiver was not knowingly and intelligently made. In addition, defendant has not offered, either below or on appeal, any other reason for finding that his *Miranda* waiver was not knowingly and intelligently made. The parties dispute, however, whether defendant's *Miranda* waiver and subsequent police statements were voluntarily made.

Although this Court reviews a trial court's determination of voluntariness de novo, *People v Eliason*, 300 Mich App 293, 304; 833 NW2d 357 (2013), the trial court's assessment of the credibility of the witnesses and the weight accorded to the evidence is given deference. *People v Ryan*, 295 Mich App 388, 396; 819 NW2d 55 (2012). The trial court's factual findings are reviewed for clear error and will be affirmed unless this Court is left with a definite and firm conviction that a mistake was made. *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010).

To determine whether a statement is voluntary, the police conduct must be examined. *Tierney*, 266 Mich App at 707. "[W]hether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion." *People v Daoud*, 462 Mich 621, 635; 614 NW2d 152 (2000). The prosecutor bears the burden of proving voluntariness by a preponderance of the evidence. *Id.* at 634. In determining voluntariness, a court should examine the totality of the following relevant circumstances: the age of the accused; his education or intelligence level; his prior experience with the police; the duration and intensity of the questioning; the length of the detention before the statement; the lack of any advice of constitutional rights; the delay in bringing the defendant before a magistrate; the health of the accused; the deprivation of food,

sleep, or medical attention for the accused; any abuse of the accused; and any threatened abuse of the accused. *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988); *Ryan*, 295 Mich App at 396-397; *Tierney*, 266 Mich App at 708. These factors present an objective standard for concluding whether *Miranda* rights were validly waived. *Daoud*, 462 Mich at 634. No single factor is conclusive. *People v Sexton (After Remand)*, 461 Mich 746, 753; 609 NW2d 822 (2000). The ultimate test of admissibility addresses whether the totality of the circumstances involving the elicitation of the confession or statement indicates that it was freely and voluntarily made. *Cipriano*, 431 Mich at 334; *Ryan*, 295 Mich App at 397.

Although the trial court purported to consider the totality of the circumstances, it did not discuss any factor other than the failure to notify defendant that an attorney was attempting to contact him. Defendant argues that the coercive circumstances leading up to his police interview and his lack of sleep rendered his statements involuntary. Conflicting testimony was presented regarding how much sleep defendant had before the interview and the extent to which a lack of sleep may have affected defendant's ability to freely and voluntarily waive his *Miranda* rights. Conflicting testimony was also presented regarding the circumstances of defendant's confinement at his home before he was taken for the interview, including whether he was segregated from his mother or prohibited from communicating with her, and the reason for his removal from the home and placement in a police vehicle before he was taken for the interview. The trial court did not render any factual findings regarding these circumstances, or the extent to which they may have affected defendant's ability to freely and voluntarily waive his *Miranda* rights.

In *Tanner*, the Supreme Court reversed the trial court's order suppressing the defendant's statements because it was based solely on the failure of the police to inform the defendant of an attorney's efforts to contact him. Although the Court held that the failure to impart such information does not invalidate an otherwise voluntary, knowing, and intelligent *Miranda* waiver, it did not affirmatively determine whether the defendant's statements were otherwise voluntary, knowing, and intelligent. Instead, it reversed the trial court's suppression order and remanded the case to the trial court for further proceedings. *Tanner*, 496 Mich at 256-257. We conclude that this same remedy is appropriate in this case. "Determination of the issue of voluntariness and resolution of the facts with respect to which there is conflicting testimony are decisions to be made initially by the trial court." *People v White*, 401 Mich 482, 494; 257 NW2d 912 (1977). Because there is conflicting testimony regarding the circumstances surrounding defendant's statements, and the trial court did not render findings of fact or determine the voluntariness of defendant's statements in light of the totality of the other relevant circumstances, we remand this case to the trial court for a determination of whether defendant's statements were voluntary.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Peter D. O'Connell