# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GERALD DEVONTE ENGLISH,

        Defendant-Appellant.

UNPUBLISHED
August 16, 2016

No. 327206
Wayne Circuit Court
LC No. 14-010553-FC

Before: BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction of armed robbery, MCL 750.529, and the associated conviction of possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 8½ to 20 years' imprisonment for the armed robbery conviction and two years' imprisonment for the felony-firearm conviction, to be served consecutive to the armed robbery sentence. We affirm.

## I. FACTS

Nakiah McDonald testified that on September 1, 2014, she received a call from her boyfriend, Rodarius Weatherford, who told her that he and defendant needed a ride. McDonald accordingly drove her Jeep Cherokee to 14827 Muirland in Detroit, Michigan, where defendant and Weatherford were attending a gathering. When she arrived, defendant and Weatherford got into her vehicle and began discussing robbing Edward Mensah, another person at the gathering, who was carrying several new $100 bills. McDonald testified that Weatherford said they were "going to take them," and defendant did not say anything in response.

Weatherford was getting in and out of the vehicle, and at some point, he began talking to Mensah while they stood in front of Mensah's car. Weatherford and Mensah then got into Mensah's car and drove away down the street. Defendant, who was still in McDonald's vehicle, told her to drive to a gas station. Surveillance video from the gas station showed Weatherford and Mensah pulling into the gas station, getting out of Mensah's vehicle, and entering the station. The video also showed McDonald pulling up to the gas station and defendant getting out of her car and going inside.

Mensah testified that once he and Weatherford arrived at the gas station, they went inside. Defendant and Weatherford's girlfriend arrived and defendant followed them into the

-1-

station. As Mensah was paying for the items he was purchasing, defendant came up behind him and started choking him. While defendant was choking Mensah, Weatherford put his hand in Mensah's pocket and took his money. Mensah claimed that more than $900 was stolen from him. He admitted that he did not see either Weatherford or defendant with any sort of weapon while they were in the store.

McDonald explained that defendant and Weatherford came out of the gas station and got into her Jeep, while Mensah got back into his car. According to McDonald, defendant did not say anything, but Weatherford told McDonald to "go," and she described it as a "racing type" voice—"Like 'hurry up, go.' " McDonald then pulled out of the gas station and began driving away. Initially, both defendant and Weatherford were in the backseat of the Jeep, but Weatherford climbed into the front seat while they were driving. McDonald explained that Mensah was following them in his car, and during the drive, Weatherford reached out of the window and shot a semiautomatic gun at Mensah's car, which she estimated was about 35 feet behind her vehicle. McDonald acknowledged that she had previously seen Weatherford with this gun on his person "[m]ost of the time." She stated that when Weatherford did not have the gun, defendant had it; they shared the gun. However, on the day of the incident, McDonald did not see defendant with the gun.

Mensah explained that while he was following the Jeep, he saw Weatherford "put his body out the window," point a gun at him, and shoot at him once or twice with what appeared to be a 9mm pistol.[1] Neither Mensah nor his car was struck. Mensah ducked and then activated the OnStar button in his vehicle to alert the police. He explained that the gunshot did not dissuade him from chasing the Jeep "because [he] was determined to get [his] money back."

After a short drive, McDonald stopped at a corner and defendant and Weatherford got out of her vehicle and fled. McDonald testified that after the men fled, she drove to her father's house. Mensah claimed that he saw Weatherford hand the gun to defendant when the two men got out of McDonald's car. He eventually returned to 14827 Muirland to wait for the police. Mensah acknowledged that defendant did not try to shoot at him.

The trial court found defendant guilty of armed robbery based on its conclusion that defendant aided and abetted Weatherford in assaulting Mensah and stealing approximately $900 from him. Based on McDonald's testimony, the court concluded that defendant was aware that Weatherford possessed the gun, and that the natural and probable consequence of the commission of the crime was that the gun might be used during the crime, as it was. In the

---

[1] Mensah acknowledged that at an earlier hearing, he had opined that Weatherford shot at him to scare him and get him to stop following them. However, he also testified that he was "scared for [his] life."

court's view, this evidence also sufficiently supported defendant's guilt as an aider and abettor to the felony-firearm charge.[2]

## II.  SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecutor presented insufficient evidence to sustain his convictions because the evidence did not establish that he had advance knowledge that Weatherford was going to have a gun.  We review questions regarding the sufficiency of the evidence de novo.  *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014).  We review the evidence presented at trial "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt."  *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).  When reviewing sufficiency claims, we must "draw all reasonable inferences and make credibility choices in support of the [trier of fact's] verdict."  *People v Nowak*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Considered in a light most favorable to the prosecution, the direct and circumstantial evidence was sufficient to prove beyond a reasonable doubt that defendant aided and abetted the commission of an armed robbery and that he committed the associated offense of possessing a firearm during the commission of that felony.  As this Court summarized in *Henderson*, 306 Mich App at 9:

> "It is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant.  Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime.  [Citations omitted.]

A person is guilty of robbery if "in the course of committing a larceny of any money or other property that may be the subject of larceny, [the person] uses force or violence against any person who is present, or . . . assaults or puts the person in fear . . . ."  MCL 750.530.  A person commits armed robbery if "in the course of engaging in [conduct proscribed by MCL 750.530]" the person "possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or . . . represents orally or otherwise that he or she is in possession of a dangerous weapon."  MCL 750.529.  The elements of armed robbery, therefore, are "(1) an assault, and (2) a felonious taking of property from the victim's person or presence, while (3) the defendant is armed with a weapon described in the statute."  *People v Henry (After Remand)*, 305 Mich App 127, 142-143; 854 NW2d 114 (2014) (citation and quotation marks omitted).

---

[2] The trial court acquitted defendant on charges of assault with intent to commit murder, MCL 750.83, assault with intent to do great bodily harm less than murder, MCL 750.84, and carrying a concealed weapon, MCL 750.227, on a theory of aiding and abetting.

In this case, the evidence clearly established the assault and the felonious taking of property from the person of the victim. Mensah testified that defendant came up behind him and put him in a choke hold while Weatherford reached into his pocket and took his money. Mensah did not see a weapon during this assault, and there is no evidence that either Weatherford or defendant made references to a weapon during the assault. However, the crime was not completed when defendant and Weatherford secured Mensah's money and fled from the gas station. In response to our Supreme Court's rejection of the "continuing transaction" view of robbery in *People v Randolph*, 466 Mich 532, 536; 648 NW2d 164 (2002), the Legislature in 2004 amended the general robbery statute, MCL 750.530, to provide the following:

> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

Both McDonald and Mensah testified that after defendant and Weatherford fled the scene, Mensah followed them in his car. Mensah specifically testified that he pursued them because he wanted to get his money back. During the course of this pursuit, Weatherford produced a handgun and fired one or two shots at Mensah. Mensah opined that the shots might have been fired to get him to stop the pursuit. Therefore, the evidence clearly established that a weapon was used during defendant's flight from the commission of the larceny or during an attempt to retain possession of the property.

Since Weatherford was the one who produced and fired the gun, the only issue is whether defendant aided and abetted this act. The elements of aiding and abetting are as follows:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time the defendant gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (citations and quotation marks omitted).]

In *Robinson*, 475 Mich at 9, our Supreme Court noted that while Michigan's aiding and abetting statute abrogated the common-law distinction between different classes of principals, it did not

> abrogate the common-law theory that a defendant can be held criminally liable as an accomplice if: (1) the defendant intends or is aware that the principal is going to commit a specific criminal act; or (2) the criminal act committed by the principal is an "incidental consequence which might reasonably be expected to result from the intended wrong." [Footnotes omitted.]

The *Robinson* Court explained that the legislative abrogation of the common-law distinction between principals meant that the Legislature "intended for all offenders to be convicted of the intended offense . . . as well as the natural and probable consequences of that

offense. . . ." *Id.* That is, "a defendant is liable for the crime the defendant intends to aid or abet as well as the natural and probable consequences of that crime." *Id.* at 14-15.

In this case, defendant actively participated in the assault on Mensah to enable Weatherford to take Mensah's money. McDonald testified that Weatherford proposed taking Mensah's money, and although defendant did not respond to Weatherford's proposal, he directed McDonald to follow Mensah and Weatherford to the gas station, followed Mensah into the station, and choked Mensah to disable him and allow Weatherford to take his money. These actions show that defendant actively participated in the robbery with prior knowledge of Weatherford's intent to commit that crime. Accordingly, defendant aided and abetted in the robbery. He then got into McDonald's vehicle with Weatherford and was present during the chase when Weatherford shot at Mensah. When they got out of McDonald's vehicle and continued their flight on foot, defendant accepted the gun from Weatherford and carried it away.

Considered in a light most favorable to the prosecution, the evidence shows that the act of shooting at Mensah during the flight from the scene of the robbery was the natural and probable consequence of the robbery. As previously noted, the robbery statute provides that the crime includes acts committed during flight or attempts to flee, or attempts to retain possession of the stolen property. MCL 750.530(2). Evidence indicates that defendant had knowledge that Weatherford possessed the handgun. McDonald testified that Weatherford generally kept the gun in the waistband of his pants, and when he did not have it, defendant had it; they shared the gun. Therefore, it was reasonable for the court to conclude that defendant knew Weatherford had the weapon. Weatherford then used the weapon as they fled in an attempt to dissuade Mensah from continuing his pursuit. Use of the weapon in this manner was a natural and probable consequence of the crime of robbery. Therefore, the court properly concluded that defendant was guilty of aiding and abetting an armed robbery.[3]

---

[3] Defendant cites *Rosemond v United States*, ___ US ___; 134 S Ct 1240; 188 L Ed 2d 248 (2014) for the proposition that he could not be convicted of aiding and abetting absent a showing of "advance knowledge" that his accomplice would bring a gun. *Rosemond* applied the federal aiding and abetting statute, 18 USC 2, to a defendant charged with violating 18 USC 924(c), which provides varying degrees of punishment for any person who uses or carries a firearm during the commission of a crime of violence or a drug trafficking crime. This case involves neither a charge based on 18 USC 924(c) nor application of the federal aiding and abetting statute. The United States Supreme Court did not purport to apply its ruling in *Rosemond* to state courts under the United States Constitution, so neither the trial court nor this Court is bound by *Rosemond*. See *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004) (noting that state courts are bound by the Supreme Court's construction of federal law); *People v Peters*, 449 Mich 515, 521 n 23; 537 NW2d 160 (1995) (explaining that the Michigan Supreme Court is not bound by decisions of federal courts where no federal constitutional right is implicated). However, this Court is bound by our Supreme Court's decision in *Robinson*, 475 Mich at 14-15, which held that aiding and abetting in Michigan encompasses the intent to aid and abet and the natural and probable consequences of the crime. See *People v Crockran*, 292 Mich App 253, 256-257; 808 NW2d 499 (2011). Further, even if *Rosemond* did apply, sufficient

-5-

Defendant does not address his felony-firearm conviction apart from his armed robbery conviction, instead arguing that both convictions must be vacated if his robbery conviction is reduced to unarmed robbery because the lesser conviction could no longer support the associated felony-firearm conviction. However, because the evidence supported defendant's conviction of armed robbery, his associated conviction of felony-firearm was likewise valid.[4]

## III. PLEA NEGOTIATIONS

Defendant next argues that his trial counsel provided ineffective assistance during plea negotiations. Whether defendant received the effective assistance of counsel guaranteed under the United States and Michigan Constitutions is a mixed question of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review for clear error a trial court's findings of fact and review de novo questions of constitutional law. *Id.* Defendant moved for a remand for an evidentiary hearing in this Court concerning his counsel's ineffectiveness, but this Court denied his motion,[5] so our review is limited to mistakes apparent on the record. *People v Dunigan*, 299 Mich App 579, 586; 831 NW2d 243 (2013).

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that a reasonable probability exists that, without counsel's unprofessional errors, the outcome of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994). Our Supreme Court summarized the analysis for an ineffective assistance of counsel claim in the plea-bargaining context in *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), as follows:

> [A] defendant is entitled to the effective assistance of counsel in the plea-bargaining process. A defendant seeking relief for ineffective assistance in this context must meet *Strickland*'s familiar two-pronged standard by showing (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." In demonstrating prejudice, the "defendant must show the outcome of the plea process would have been different with competent advice." Where, as here, the

---

evidence supported that defendant had advance knowledge that Weatherford was armed based on McDonald's testimony.

[4] Aside from this fact, McDonald's testimony established that Weatherford and defendant "shared" the gun, defendant inferentially knew that Weatherford possessed the gun during the larceny, and he clearly knew about the gun after Weatherford used it during Mensah's pursuit. Mensah's testimony established that defendant accepted the gun from Weatherford while they were still fleeing from Mensah and while the robbery was still "active." Accordingly, evidence established that defendant possessed the firearm during the commission of a felony.

[5] *People v English*, unpublished order of the Court of Appeals, entered January 14, 2016 (Docket No. 327206).

alleged prejudice resulting from counsel's ineffectiveness is that the defendant rejected a plea offer and stood trial,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [Citations omitted.]

Defendant claims that his trial counsel failed to effectively negotiate with the prosecutor to obtain a plea bargain offer that was at least as favorable as those given to his codefendants.[6] On appeal, defendant provided an affidavit in which he states that "[h]ad his attorney negotiated a plea to either probation or 1½ years on the minimum like the sentences that his co-defendants received he would have accepted a plea."

Defendant acknowledges that the prosecutor made him a plea offer before trial, and in fact the record reveals that the prosecutor made two plea offers, both of which defendant rejected. Nonetheless, defendant argues that he was not given an offer as favorable as those given to, and accepted by, his codefendants. The record reveals that defense counsel was substantially involved in trying to work out a favorable plea bargain on behalf of defendant. Defendant fails to acknowledge that he has no right to a plea offer, *Lafler v Cooper*, ___ US ___, ___; 132 S Ct 1376; 182 L Ed 2d 398 (2012), and he provides no evidence that the prosecutor would have been willing to offer a more favorable plea bargain if only counsel had been a more effective negotiator.[7] Defendant has simply not established that his trial counsel's efforts fell below an objective standard of reasonableness, and he has failed to show prejudice by demonstrating that further negotiations would have resulted in the prosecutor offering a better plea deal, that the court would have accepted such an offer, and that the sentence under such an offer would have been better than what defendant ultimately received. Accordingly, defendant's ineffective assistance claim fails.

---

[6] Defendant represents that Weatherford was allowed to plead guilty to a charge of unarmed robbery and was sentenced to a minimum sentence of 1½ years. McDonald also pleaded guilty to a charge of unarmed robbery. Defendant represents that McDonald was sentenced to a term of probation for her guilty plea.

[7] We also note that defendant's Presentence Investigation Report (PSIR) reveals that he had a prior unarmed robbery conviction by guilty plea, for which he received 2 years' probation under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.* McDonald's involvement in the crime was not as substantial as her co-defendants' and she agreed to testify on behalf of the prosecution. Defendant has not provided any information concerning Weatherford's prior criminal history.

## IV. SENTENCING

Finally, defendant argues that after he was sentenced, our Supreme Court held in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), that the sentencing guidelines are advisory only and all sentences are now subject to a reasonableness standard. He contends that his sentence was not reasonable because he was given a sentence five times higher than the codefendant shooter in this case. He also argues that his trial counsel provided ineffective assistance at sentencing because he failed to present mitigating factors and reasons for departing from the sentencing guidelines.[8]

In *Lockridge*, 498 Mich at 364, our Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US __; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient." Therefore, "to the extent that the OVs scored on the basis of facts not admitted by the defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e. the defendant's 'mandatory minimum' sentence, that procedure violates the Sixth Amendment." *Lockridge*, 498 Mich at 373-374. To remedy the constitutional violation, the Court held that "a guidelines minimum sentence range calculated in violation of *Apprendi* and *Alleyne* is advisory only and . . . sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Id.* at 365. "To preserve as much as possible the legislative intent in enacting the guidelines, however, . . . a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence." *Id.*

Contrary to defendant's assertions on appeal, the *Lockridge* Court did not hold that the guidelines were advisory in every instance, but rather that "a guidelines minimum sentence range calculated in violation of *Apprendi* and *Alleyne* is advisory only . . . ." *Lockridge*, 498 Mich at 365. Defendant makes no argument that his offense variables (OVs) were scored based on judicially-found facts in violation of *Apprendi* and *Alleyne*. Similarly, defendant is mistaken when he asserts that all sentences are now subject to a reasonableness standard. Rather, departure sentences are subject to such a standard. *Lockridge*, 498 Mich at 392. Defendant was sentenced within the guidelines range. Accordingly, his argument is without merit.

Regarding his ineffective assistance claim, aside from arguing that his sentence differed from the sentences imposed on his codefendants, defendant claims that his counsel failed "to prepare for sentencing and to present mitigating factors and reasons for departure." The record does not support that defense counsel failed to adequately prepare for sentencing. At sentencing, counsel stated that there were objections to the scoring of the sentencing guidelines, and he and the prosecutor agreed that the scoring of OV 12 had to be changed from 10 points to 0 points, which lowered defendant's minimum sentencing guidelines range. Counsel argued that Weatherford was the "main man" in the commission of the crime, and that defendant had no

---

[8] Again, because defendant did not raise an ineffective assistance claim below, and this Court denied his motion to remand for an evidentiary hearing, our review is limited to mistakes apparent on the record. *Dunigan*, 299 Mich App at 586.

prior record, other than a "successfully completed" HYTA unarmed robbery conviction. He therefore requested a sentence at the bottom of the guidelines range. These certainly constituted mitigating factors. Defendant also offered his own statement, which contained his apologies for his conduct; his recognition of his failure to learn from his prior offense and probation; his failure to change his behavior for his mother's and his daughter's sake; his abuse of drugs, medication, and alcohol; his failure to set a good example for his codefendant; and his thankfulness that no lives were lost. These statements had far more potential to mitigate the court's sentence when they were presented by defendant rather than by his counsel.

Defendant fails to present any other mitigating circumstances that the judge was not aware of that could have affected his sentence. In *People v Buie (On Remand)*, 298 Mich App 50, 66; 825 NW2d 361 (2012), this Court explained that when a defendant "fails to specify what mitigating factors defense counsel should have presented at sentencing," he fails to establish the factual predicate of his ineffective assistance claim. Therefore, defendant has failed to establish that his counsel provided ineffective assistance at sentencing.

Affirmed.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola